IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00777-KDB-DCK

| | |
|---|---|
| PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> JORDANS TRUCKING, LLC; KELVIN HALL; ROBIN HALL; BRIAN PRESTON GREER; J&L TRUCKING OF NC, LLC; AND AMERICAN MILLENNIUM INSURANCE COMPANY, <br><br> Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendants Kelvin and Robin Hall's (together, the "Halls") Motion to Dismiss or, in the Alternative to Transfer Venue, (Doc. No. 8), in which the Halls argue that the Court should dismiss the Complaint for lack of personal jurisdiction. Alternatively, the Halls request that the Court transfer this case to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). *See* Doc. No. 8. The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court finds that it lacks personal jurisdiction over the Defendants but rather than dismiss this action will **GRANT** Defendants' alternative motion to transfer this matter to the District of South Carolina.

1

# I. LEGAL STANDARD

## A. Personal Jurisdiction under Rule 12(b)(2)

### 1. The Pleading Standard

A party invoking federal jurisdiction has the burden of establishing that personal jurisdiction exists over the defendants. *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). However, when the court addresses the question of personal jurisdiction in a Rule 12(b)(2) motion on the basis only of motion papers, supporting legal memoranda, and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the challenge. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). In considering a challenge on such a record, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). While a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist," *IMO Indus., Inc. v. Seim S.R.L.*, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006), if a plaintiff comes "forward with affidavits or other evidence to counter that of the defendant . . . factual conflicts must be resolved in favor of the party asserting jurisdiction . . . ." *Id.*

### 2. Types of Personal Jurisdiction

There are two types of constitutionally permissible personal jurisdiction: general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). "A court with general jurisdiction may hear *any* claim against that

defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (emphasis in original) (citing *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (internal quotations omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 924).

Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 918 (citations omitted). A court may exercise specific jurisdiction over a nonresident defendant if doing so comports with both the forum state's long-arm statute and the Fourteenth Amendment Due Process Clause. *See, e.g.*, *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Under the Fourteenth Amendment Due Process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To determine whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the

3

plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)). Thus, to satisfy the pleading requirements for specific jurisdiction, a plaintiff must plausibly allege that (1) the defendants purposefully availed themselves of the privilege of conducting activity in North Carolina, (2) plaintiff's claims arise out of those activities, and (3) exercising personal jurisdiction would be fair. *See Carefirst*, 334 F.3d at 397.

### B. Transfer of Venue, 28 U.S.C. § 1404(a)

Pursuant to Section 1404, Title 28 of the United States Code, "a district court [may] transfer any civil action to any other district where it might have been brought" . . . "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *In re Carefirst of Maryland, Inc.*, 305 F.3d 253, 255 (4th Cir. 2002). A court may transfer an action even when it lacks personal jurisdiction over the defendants. *See generally Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Indeed, § 1404(a) vests district courts with the discretion to transfer based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). To evaluate whether to transfer a case to another jurisdiction under § 1404(a), courts in the Western District of North Carolina review and weigh eleven factors:

> (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home [and] the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11), the avoidance of unnecessary problems with conflict of laws.

4

*See, e.g.*, *W.M. Barr & Co., Inc. v. Dumond, Inc.*, No. 322-cv-00447, 2022 WL 17576338, at *4 (W.D.N.C. Dec. 9, 2022) (citing *Com. Equip. Co., Inc. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990)).

A defendant seeking dismissal of a non-citizen plaintiff's cause of action "must make a showing that the 'relevant public and private interests strongly favor a specific, adequate, and available alternative forum.'" *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 802 (4th Cir. 2013) (citation omitted). However, when the action "bears little relation to that forum . . . [plaintiff's choice of forum] is not entitled to the same deference." *See W.M. Barr & Co.*, 2022 WL 17576338, at *6.

## II. FACTS AND PROCEDURAL HISTORY

This matter arises out of an automobile accident that occurred in Rock Hill, South Carolina. Doc. No. 1 at 4; *see also* Doc. 1-C. On October 15, 2020, Defendant Kelvin Hall was driving his work vehicle when he collided with Defendant Brian Greer, who was operating a 2016 Freightliner (the "Tractor") owned by non-party Penske Truck Leasing Co., L.P. and leased to Defendant J&L Trucking ("J&L") (the "Accident"). *Id.* The Tractor was pulling a trailer (the "Trailer") owned by non-party Eric Plyler and transporting cargo (the "Shipment") to Florida. *Id.* at 4–5. Initially, the Shipment was supplied to Defendant Jordans Trucking ("Jordans"), but it was re-negotiated to J&L in a broker-carrier agreement. *Id.* at 5. According to the agreement's terms, J&L hauled and received all payment for the Shipment; in turn, J&L would "defend, indemnify, and hold harmless" Jordans and secure an auto liability policy naming Jordans as an additional insured. *Id.*

At the time of the Accident, Greer was a J&L employee and a scheduled driver on J&L's insurance policy (the "AMIC Policy"), issued by Defendant American Millennium Insurance Company ("AMIC") with a liability limit of $1,000,000. Doc. No. 1 at 5–7; *see also* Doc. 1-A.

The AMIC Policy covered both the Tractor and the Trailer. *Id.* Relatedly, Plaintiff Progressive Southeastern Insurance Company ("Progressive") insured Jordans under a commercial auto insurance policy (the "Progressive Policy") with a $1,000,000 liability limit. Doc. No. 1 at 7–10; *see also* Doc. 1-B. However, neither the Tractor nor the Trailer was declared on the Progressive Policy, and neither qualified for additional, replacement, or temporary substitute auto coverage. Doc. No. 1 at 10.

Mr. Hall and his wife, Robin Hall, made an insurance claim with AMIC for their collective injuries and damages arising from the Accident, including allegations against Jordans. *Id.* Ultimately, AMIC denied coverage to Jordans on September 13, 2022, stating that it would not defend or indemnify Jordans against the Halls' claims because Jordans was "neither an insured nor an additional insured" on the AMIC Policy. *Id.* at 10–11. AMIC then offered the AMIC Policy's remaining liability limit of $987,826 to the Halls, settling with the couple in exchange for a covenant not to execute ("Covenant") on October 17, 2022. *Id.* at 11–12; *See* Doc. 8-B. The Covenant covered J&L, Greer, AMIC, and non-parties Eric Plyler and Penske Truck Leasing Co., L.P., but excluded Jordans. *Id.*

On February 6, 2023, the Halls filed suit (the "State Action") against Greer, J&L, and Jordans in York County, South Carolina, asserting theories of vicarious liability and lease liability against Jordans. Doc. No. 1 at 12; *see also* Doc. 1-C. Correspondingly, Progressive has provided Jordans' defense for the State Action, incurring at least $15,325 in expenses. Doc. No. 1 at 12–13. During the State Action's pendency, Progressive filed this case on November 16, 2023, seeking declaratory relief related to its rights and obligations under the Progressive Policy, principally concerning its ongoing legal defense of Jordans. *Id.* at 13. Specifically, Progressive seeks a judgment that the Progressive Policy affords no such coverage and, instead, that the AMIC Policy

6

entitles Jordans to a defense and coverage in connection with the Accident. *Id.* at 14. The Halls filed the pending Motion on January 10, 2024. Doc. No. 8. The Motion is fully briefed and ripe for the Court's review.

### III. DISCUSSION

#### A. Personal Jurisdiction under Rule 12(b)(2)

For reasons explained below, the Court finds it lacks general or specific personal jurisdiction over the Halls. Regarding general jurisdiction, Mr. Hall submitted an affidavit stating that he and Ms. Hall were not North Carolina residents at the time Progressive filed this action. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019) (permitting the Court to consider affidavits of residency on a jurisdictional motion); Doc. 8-E. The Halls moved from Gastonia, North Carolina, to South Carolina in 2005, and Mr. Hall worked for the South Carolina Department of Social Services when the Accident occurred. Doc. 8-E at 1. Likewise, the Halls have not owned real property in North Carolina in the preceding eighteen years. *Id.* The foregoing facts establish that the Halls are domiciled in South Carolina, not North Carolina. *See Reddy v. Buttar*, 38 F.4th 393, 400 (4th Cir. 2022) (citations omitted) (describing an individual's domicile as his "physical presence in that State with an intent to make [that] State a home").

Progressive does not refute most of Mr. Hall's testimony or otherwise challenge the fact that the Halls have lived in South Carolina for nearly two decades. *See* Doc. 8-E; Doc. No. 27. It simply contends that the Halls have "continuous and systematic contacts" with North Carolina because Mr. Hall is a registered agent for "multiple North Carolina non-profit and business corporations."[1] Doc. No. 27 at 8. In his affidavit, Mr. Hall affirmed that he formerly operated a

---

[1] Aside from Genesis House, Progressive cites only Genesis House Support Network, Inc. to illustrate the "multiple" corporations for which it claims Mr. Hall acts as registered agent. *See* Doc. No. 27 at 8–9.

7

North Carolina-registered non-profit, Genesis House, but denied any involvement with the corporation since its closure in 2014. Doc. 8-E at 2. Nonetheless, Progressive counters that these contacts establish the Court's general jurisdiction over the Halls. *See* Doc. No. 27 at 7–8.

First and foremost, Progressive largely neglects to identify or discuss the Halls' domicile, though it acknowledges that the Halls are "former" rather than current North Carolina residents. *See* Doc. No. 1 at 3; Doc. No. 27; *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 924) (stating that an individual's domicile is "the paradigm forum for the exercise of general jurisdiction"). Second, Progressive oversimplifies the general jurisdictional inquiry, extracting the "continuous and systematic" language from the analysis while ignoring the character and context of the Halls' contacts. *See* Doc. No. 27 at 7–9. A court is authorized to assert general jurisdiction only in "instances in which the [party's] *continuous corporate operations within a state [are] so substantial and of such a nature* as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Goodyear*, 564 U.S. at 924 (emphasis added) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). In other words, Progressive attempts to consolidate the Halls' random and limited North Carolina contacts, scattered over the past two decades, and repackage them as "continuous and systematic" to belie their otherwise attenuated nature. *Goodyear*, 564 U.S. at 919. Yet, even in the aggregate, the Halls' contacts lack the substantial character necessary to "render [them] essentially at home [in North Carolina]" and thereby justify general jurisdiction for wholly unrelated claims. *Id.*

Moreover, Progressive's contention that the North Carolina Secretary of State lists Genesis House in "current-active" status,[2] naming Mr. Hall as its registered agent, is not evidence that

---

[2] Notably, thousands of defunct non-profits incorporated in North Carolina continue to "exist" as legal entities because non-profits are not required to file basic annual reports with the

8

Case 3:23-cv-00777-KDB-DCK    Document 35    Filed 07/23/24    Page 8 of 13

meaningfully rebuts Mr. Hall's affidavit. *See* Doc. 8-E at 2; Doc. No. 27 at 8–9. Regardless, jurisdictional discovery is not needed to clarify the scope of Mr. Hall's role with Genesis House because his past work is irrelevant. *See* Doc. No. 27 at 13. Assuming, *arguendo*, that Genesis House remains presently active as a non-profit, Mr. Hall's status as its registered agent would still fall far short of the obligatory "continuous and systematic" business contacts for general jurisdiction. *Goodyear*, 564 U.S. at 929; *see Gullum v. Endeavor Infrastructure Holdings, LLC*, No. 1:21-CV-245, 2022 WL 264883, at *3 (W.D.N.C. Jan. 27, 2022) (explaining the Fourth Circuit's rule that a non-resident defendant's status as a company officer is "too tenuous" a connection to act as the sole basis for jurisdiction). In sum, the Court cannot assert general personal jurisdiction because the Halls were domiciled in South Carolina when Progressive filed this action and do not have the requisite "continuous and systematic" contacts with North Carolina.

Similarly, Progressive has not alleged facts that plausibly support this Court's specific personal jurisdiction over the Halls. To determine whether sufficient minimum contacts exist for specific jurisdiction, the Court considers three factors: "(1) the extent to which the defendant[s] purposefully availed [themselves] of the privilege of conducting activities in the State; (2) whether the . . . claims [arose] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014).

---

state. *See* N.C. Ctr. for Nonprofits, *Modernizing North Carolina's Nonprofit Laws*, PUBLIC POLICY BLOG, https://ncnonprofits.org/public-policy-blog/modernizing-north-carolinas-nonprofit-laws (last visited July 16, 2024).

The parties disagree over whether the Halls have purposefully availed themselves of the privilege of conducting activities in North Carolina.[3] *See* Doc. No. 8 at 6; Doc. No. 27 at 10–11. "Where the defendant '*deliberately*' has engaged in *significant* activities within a state . . . he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985) (emphasis added) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)). Progressive argues that the Halls' "repeated entry" into North Carolina for medical treatment demonstrates their purposeful availment of the state's privileges and benefits. Doc. No. 27 at 11. However, the South Carolina State Accident Fund coordinated Mr. Hall's workers' compensation claim for the Accident and directed his medical care. Doc. No. 8 at 6. To that end, the Halls' visits to three providers in Charlotte and Gastonia for post-Accident treatment, even if that could somehow support specific jurisdiction here, were neither deliberate nor significant. *See* Doc. No. 27 at 10–11; *Burger King*, 471 U.S. at 475–76.

Likewise, this matter did not in any way arise out of or relate to the Halls' activities in North Carolina. Contrary to Progressive's assertion that the Halls "initiated this contact [their insurance claim] and supported it with North Carolina medical expenses," Doc. No. 27 at 11, the instant case and related litigation arose out of the Accident, which occurred in South Carolina. Doc. No. 1 at 4. The Halls reported insurance claims and filed their State Action – again in South Carolina – to recover associated damages from the Accident. *See* Doc. No. 1 at 10, 12. Now, Progressive seeks declaratory relief clarifying its rights and duties, primarily regarding Jordans' liability coverage for the Accident. *See* Doc. No. 1 at 12–22; Doc. 1-C. The Accident is the linchpin

---

[3] The Court previously addressed Progressive's argument regarding Mr. Hall's registered agent status (or lack thereof) but notes that it unequivocally fails at step two of the specific personal jurisdiction analysis (the complete absence of any nexus with the claims asserted). Thus, the Halls' "willingness" to purposefully avail themselves to North Carolina is immaterial. *See* Doc. No. 27 at 10.

of this action and all others; none of the Halls' interactions in North Carolina "form the basis" for this suit. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). Without the Accident's occurrence, the Halls' purported North Carolina contacts would be limited at most to Mr. Hall's prior work for a shuttered non-profit organization and his cell phone number.[4] *See* Doc. 8-E.

In sum, the Halls' alleged "demonstrated capability" of traveling to North Carolina does not confer personal jurisdiction. *Id.* Even though the Halls live in upstate South Carolina, near the North Carolina-South Carolina border, Doc. 8-E at 1, there is no such thing as "suburban" jurisdiction predicated on the Halls' relative ease and ability to travel to an adjoining state. Despite their proximity, the Halls have not purposefully availed themselves of conducting activity in North Carolina, and Progressive's claim did not arise out of their contacts with North Carolina. Therefore, this Court does not have personal jurisdiction over the Halls with respect to this matter.

### B. Transfer of Venue, 28 U.S.C. § 1404(a)

As the Court lacks personal jurisdiction over the Halls, it must determine whether this action should be dismissed or, if "in the interest of justice," transferred to the District of South Carolina. *See* 28 U.S.C. § 1404(a). A venue transfer is "generally considered to be more 'in the interest of justice' than dismissal . . . particularly where it appears that venue may be properly laid in the proposed transferee district." *See Rags to Royals v. Rags 2 Royalty Rescue, Inc.*, No. 1:18-CV-00034, 2019 WL 914132, at *4 (W.D.N.C. Feb. 25, 2019); *see also LeBlanc v. Holder*, 784 F.3d 206, 209 (4th Cir. 2015).

---

[4] In its Complaint, Progressive proffered Mr. Hall's home phone number and 704 area code as a factor favoring this Court's personal jurisdiction over the Halls. *See* Doc. No. 1 at 3. Progressive declined to expand its argument, but the Court notes that he acquired his number twenty-five years ago. *See* Doc. 8-E; Doc. No. 27. Also, cell phones are portable as a matter of course, so an individual's mobile number indicates little about their domicile or contacts.

11

Here, the relevant analysis favors transfer to the District of South Carolina. *See W.M. Barr & Co., Inc. v. Dumond, Inc.*, No. 322-cv-00447, 2022 WL 17576338, at *6 (W.D.N.C. Dec. 9, 2022) (categorizing the Western District's key § 1404 factors: (1) the plaintiff's choice of forum; (2) the parties' convenience; (3) witness access and convenience; and (4) the interest of justice). A transfer cures this Court's lack of personal jurisdiction over the Halls: (1) the Halls are domiciled and subject to general jurisdiction in South Carolina; (2) the Halls filed the underlying State Action in York County, South Carolina; and (3) the Accident giving rise to this action occurred in South Carolina. *See* Doc. No. 1; Doc. No. 8; Doc. 8-E.

Although "courts [give] great weight to [a plaintiff's choice of forum]," the present matter "bears little relation" to Progressive's selection of the Western District of North Carolina as its forum. *W.M. Barr & Co.*, 2022 WL 17576338, at *6 (citing *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)). To reiterate, the Accident occurred in South Carolina, spawning this case and all related insurance claims. Doc. No. 1 at 4. The Halls and Greer are South Carolina residents, and while J&L and Jordans are North Carolina limited liability companies, all four parties are already involved in the Halls' pending State Action. *See* Doc. No. 1 at 3; Doc. 1-C. By contrast, Progressive chose this forum solely due to "the insurance contracts at issue [which] were delivered to [J&L] and [Jordans] at an address . . . located within this District." *Id.* Consequently, Progressive's choice of forum is "not entitled to the same deference" typically afforded to plaintiffs. *Id.* (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). In the same vein, Progressive and AMIC are incorporated in Indiana and New Jersey, respectively, making South Carolina and North Carolina equally convenient for both entities. Doc. No. 1 at 1–2. On balance, the District of South Carolina is therefore an appropriate transferee and the Court will transfer this action to that court.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Transfer Venue (Doc. No. 8) is **GRANTED;** and

2. The Clerk is directed to transfer this action to the District of South Carolina and then close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 23, 2024

Kenneth D. Bell
United States District Judge